**John DOE, Appellant,**

v.

**Jay B. STEPHENS, et al.**

**No. 86–5616.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 10, 1988.

Decided July 15, 1988.

Michael A. Lubin, Washington, D.C., for appellant.

Charles F. Flynn, Asst. U.S. Atty., with whom John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellees. Joseph E. diGenova, U.S. Atty.[*] and Royce C. Lamberth, Asst. U.S. Atty.,[*] Washington, D.C., also entered appearances for appellees.

Before WALD, Chief Judge, and EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant, a veteran with a long history of psychiatric treatment, appeals from a district court judgment dismissing his various claims for relief stemming from the unauthorized release by the Veterans' Administration ("VA") of his private medical records. We affirm the dismissal of Doe's claims for monetary relief, and affirm in part and reverse in part the dismissal of Doe's claims for equitable relief.

## I. BACKGROUND

The instant appeal marks the third appearance of this case before our court.

The facts of Doe's claim and the early procedural history of this case are set out at length in *Doe v. Harris*, 696 F.2d 109 (D.C.Cir.1982) (hereinafter *"Doe I"*) and *Doe v. DiGenova*, 779 F.2d 74 (D.C.Cir. 1985) (*"Doe II"*).[1] We therefore summarize them here.

On October 22, 1981, Assistant United States Attorney ("AUSA") David Stanley informed John Doe[2] by letter that he was a target for criminal prosecution in an ongoing grand jury investigation of fraudulently collected unemployment benefits. On November 3, 1981, Stanley met with Doe and his court-appointed counsel. At that meeting, Stanley informed Doe of the evidence against him, gave Doe the opportunity to plead guilty to multiple felony charges, and sought to enlist Doe's assistance in an ongoing investigation. On the same day, unbeknownst to Doe, AUSA Stanley also caused a grand jury subpoena to be issued to the director of the VA for the production of Doe's claim file and "any medical records maintained for the claimant." These records were primarily psychiatric, containing information about Doe's treatment in the VA's mental health clinic for paranoid-schizophrenia. On November 5, the VA turned over Doe's records to two metropolitan police department officers. In support of its disclosure, the VA cited two VA regulations issued pursuant to the Veterans' Records Statute, 38 U.S.C. § 3301(a). *See* 38 C.F.R. § 1.506(a) (1984); 38 C.F.R. § 1.511(b) (1984).[3]

Upon learning that the VA had released his client's psychiatric records, Doe's counsel informed the prosecutor that he believed that Doe's rights had been violated

---

[*] At time of appearance.

1. The succession of a new United States Attorney for the District of Columbia accounts for the changed identities of the named defendant-appellee in these successive appeals.

2. The plaintiff-appellant was granted leave to proceed under the pseudonym "John Doe" by a district court order issued in January 1982. *See Doe II*, 779 F.2d at 76 n. 1.

3. 38 C.F.R. § 1.506(a) (1984) provides that:
 (a) All records or documents required for official purposes by any department or other agency of the U.S. Government or any State

unemployment compensation agency acting in an official capacity for the Veterans Administration shall be furnished in response to an official request, written, or oral, from such department or agency.

38 C.F.R. § 1.511(b) (1984) provides that:
 (b) Where the process of a United States court requires the production of documents or records (or copies thereof) contained in the Veterans Administration file of a claimant, such documents or records (or copies) will be made available to the court out of which process has been issued.

and that Doe would initiate legal action if the prosecutor did not take certain specified steps to protect Doe's rights. *See Doe I*, 696 F.2d at 110 (listing Doe's demands). Negotiations towards an agreement proved unavailing, and on January 6, 1982, Doe filed suit against AUSA Stanley, two VA officials, and other federal and District of Columbia law enforcement officials. He alleged violation of his rights under the fourth, fifth, and sixth amendments of the Constitution, the D.C. patient-physician privilege, the D.C. Mental Health Information Act of 1978 (D.C. Code § 6–2002(a) (1981)), and the Veterans' Records Statute, the federal law requiring that VA records be kept confidential. Doe sought court orders transferring the files to Doe's attorney, sealing defendants' files relating to his medical records, declaring the grand jury subpoena and the VA's release of the files to have been illegal, and preventing the defendants or their agents from reacquiring or disseminating the contents of the files.

In *Doe I*, this court held that Doe's claim was not rendered moot by the representations of the U.S. Attorney's Office and the District of Columbia police that no use had been or would be made of Doe's records. The court, reversing the district court's dismissal of the case, explained that the case record suggested "that Doe remains under investigation for fraudulent receipt of unemployment compensation," and therefore that the risk was not "negligible that Doe may encounter repetition of the official conduct that gave rise to this suit." It also noted that the VA continued to assert the validity of its disclosure of Doe's records, and that the VA had not pledged not to disclose Doe's files in the future. Finally, the court observed that the possibility of money damages kept the suit vital. *See* 696 F.2d at 112–14.

In the aftermath of *Doe I*, Doe amended his complaint to seek money damages against the United States based upon the

VA's disclosure of his records. This claim rested upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680.[4] Pretrial discovery followed, during which AUSA Stanley stated that he had issued the subpoena for Doe's medical records (as opposed merely to his VA claim file) for two reasons. He declined at that time to identify the first reason on the grounds that doing so would violate the grand jury secrecy rule of Fed.R.Crim.P. 6(e). He did, however, set forth the reason in a sealed affidavit submitted to the district court, and he invited that court to exercise its authority to disclose the contents of that affidavit under Fed.R.Crim.P. 6(e)(3)(C)(i). The second reason for issuing the subpoena, Stanley stated, was that his meeting with Doe and his counsel had suggested "that Mr. Doe might be preparing to assert an insanity defense to any charges that might be brought against him, and I felt that it would be important to ascertain whether such a defense might be available, and how strong such a defense might be."

On cross-motions for summary judgment, the district court granted defendants' motion, concluding that the release of the claim file was authorized by the Veterans' Records Statute. In *Doe II*, however, this court reversed. It held that the Veterans' Records Statute, as modified by the Privacy Act, did *not* permit disclosure of Doe's records, and that disclosure had not been made for a "routine use" exempt from Privacy Act strictures under 5 U.S.C. § 552a(b)(3). *See* 779 F.2d at 78–87. Accordingly, the court invalidated the VA regulations in question to the extent they were inconsistent with the Privacy Act. *See id.* at 79 n. 8. It remanded the bulk of Doe's claims for reconsideration.

On remand, the first of AUSA Stanley's two reasons for securing the subpoena of Doe's medical files emerged, as the parties agreed to unseal Stanley's affidavit and the district court determined that doing so was

---

**4.** As we have noted, Doe did not explicitly seek damages based upon Assistant U.S. Attorney Stanley's efforts to obtain his records. *See Doe II*, 779 F.2d at 77 n. 6. Nor did he seek damages from the individual defendants in this suit, or a

*Bivens* damage remedy based upon the constitutional violations he alleges. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

appropriate under Fed.R.Crim.P. 6(e)(3)(C)(i). The grand jury investigation, the Stanley affidavit stated, had indicated that certain employees of the District of Columbia Department of Employment Services, including Doe, had caused computers to issue benefits checks to themselves and others, and that Doe himself had received and negotiated U.S. Treasury checks marked "VA Comp." Stanley had therefore caused the VA subpoena to issue in order to appraise plaintiff's VA benefits claim and to determine whether it was fraudulent or legitimate. Doe was, however, never indicted in connection with this investigation.

On cross-motions for summary judgment on remand, the district court entered a declaratory judgment, in accord with *Doe II*, that the VA's disclosure of Doe's records violated the Veterans' Records Statute and the Privacy Act. However, the court, in its July 29, 1986 order granted summary judgment for appellees on all of Doe's remaining claims. *See Doe v. DiGenova*, 642 F.Supp. 624 (D.D.C.1986) (hereinafter *"District Court Opinion"*). Doe's appeal followed.

## II. Discussion

### A. *Doe's Claims for Money Damages*

We turn first to Doe's claims for money damages under the FTCA. That act makes the United States government liable for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Unless the government action in question falls within one of the exceptions enumerated by 28 U.S.C. § 2680, the government is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

In this case, Doe bases his FTCA claims upon alleged violations of the physician-patient privilege and the District of Columbia Mental Health Information Act, and upon the VA's alleged abuse of process, tortious invasion of privacy by intrusion, and breach of a confidential relationship. The district court, however, found distinct flaws in each of these five claims. Moreover, it found that even if the disclosure of Doe's records had been unlawful under any of these theories, liability based upon the VA's actions would be barred by the FTCA exclusion contained in 28 U.S.C. § 2680(a). *See District Court Opinion* at 632–33. That provision excludes from FTCA coverage "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation [is] valid."

Like the district court, we find that the 28 U.S.C. § 2680(a) exclusion squarely blocks appellant's claim for damages based upon the actions of the VA. Doe's argument for damages from the VA boils down to his assertion that the release of his medical records was unlawful. *See* Brief for Appellant at 39. Yet although it is true, as *Doe II* establishes, that the VA was unauthorized to release Doe's records in response to the grand jury subpoena, the mere fact of governmental illegality does not of itself establish absence of due care so as to entitle one to damages under the FTCA. Quite the contrary: § 2680(a) specifically states that the mere invalidity of a statutory or regulatory stricture relied upon by a government employee is not tantamount to the absence of due care. *See id.* (due care exclusion for acts based upon statute or regulation applies "whether or not such statute or regulation [is] valid").

In this case, the VA has asserted, and Doe does not contend otherwise, that it based its decision to release Doe's records in response to the grand jury subpoena upon regulations promulgated under the Veterans' Records Statute. *See supra.* That statute exempts from ordinary confidentiality norms those records "required by process of a United States court to be produced in any suit or proceeding therein pending," 38 U.S.C. § 3301(b)(2), or "re-

quired by a department or any other agency of the United States Government," 38 U.S.C. § 3301(b)(3). The regulations issued thereunder state (1) that "records or documents required for official purposes by any department or agency ... shall be furnished in response to an official request," and (2) that "where the process of a United States court requires the production of documents ... contained in the [VA] file, such documents ... will be made available to the court." *See* note 3, *supra*. As *Doe II* observed, these regulations certainly "seem, on their faces to authorize the disclosure of Doe's records," *Doe II*, 779 F.2d at 88 n. 26. Thus, the VA's action would seem to fit comfortably within the § 2680(a) exclusion of governmental actions based upon even invalid regulations. *Compare Powell v. United States*, 233 F.2d 851 (10th Cir.1956) (FTCA held to bar sheep-owner's damages claim based upon application to him of allegedly "irregular [and] ineffective" land-use regulation).

Nor can Doe credibly argue that in hewing to the regulations in question the VA exhibited an absence of due care so as to render the § 2680(a) exclusion inapplicable. In determining the VA regulations to have been superceded by the more privacy-protective strictures of the Privacy Act incorporated into the Veterans Records Act by amendments adopted in 1976, *Doe II* relied upon an interpretive analysis that was not necessarily foreseeable to even a careful student of the enactment. The Privacy Act's language is hardly self-explanatory: in pertinent part it permits disclosure of documents only "pursuant to the order of a court of competent jurisdiction," 5 U.S.C. § 552a(b)(11). *Doe II* accordingly was required to engage in a close precedential analysis of the nature of a federal grand jury subpoena to determine if it indeed qualified as an "order of a court" within the meaning of that Privacy Act term. Even that inquiry proved unavailing: the court concluded that the legislative history of the Act "is subject to conflicting interpretations." Ultimately, the court reached the interpretation it did—and invalidated the VA regulations—by relying upon interpretations of the term "order" as under-

stood in other statutes, and upon the broad privacy-protective purposes of the Privacy Act.

We cannot, in short, fairly predicate negligence liability on the basis of the VA's failure to predict the precise statutory interpretation that led this court in *Doe II* to reject the agency's reliance on the Veterans Records Act as authorization for its adherence to the grand jury subpoena. Doe does not credibly allege any other acts evincing lack of due care. *See Dupree v. United States*, 247 F.2d 819 (3d Cir.1957) (absence of due care unproven where plaintiff did no more than allege the invalidity of the regulations applied against him). This case thus fits within the FTCA's exclusion in § 2680(a) for cases of agency illegality that nevertheless give rise to no damage exposure.

█ Doe also asks in this appeal for damages based upon AUSA Stanley's decision to subpoena his records. We have previously interpreted his amended complaint not to request monetary relief based upon the AUSA's actions, *see Doe II*, 779 F.2d at 77 n. 6, but we address this damages claim here because on reappraisal we find that the complaint can plausibly be read to seek such relief. Our conclusion is that this claim for damages is defeated by the second exclusion of FTCA § 2680(a), which bars damage claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The Supreme Court has recently held that this "discretionary function" exclusion "applies only to conduct that involves the permissible exercise of policy judgment" and does not bar claims based upon a governmental departure from clear regulatory standards. *See Berkovitz v. United States*, —— U.S. ——, ——, 108 S.Ct. 1954, 1960, 100 L.Ed.2d 531 (1988). In this case, however, appellant cites no regulations violated here that meaningfully cabin the U.S. Attorney's ordinarily discre-

tionary authority to issue a subpoena.[5] We therefore find that the 28 U.S.C. § 2680(a) bar shelters the government from damage liability based upon the issuance of the subpoena.

Given this fundamental conclusion of nonliability, we need not address each of the specific tort doctrines Doe has invoked as a basis for damages under the FTCA.[6]

## B. *Doe's Claims for Equitable Relief*

Does premises his request for equitable relief not only on the VA's violation of the Privacy Act, as incorporated into the Veterans' Records Statute, but also on the VA's and U.S. Attorney's alleged violations of a number of Doe's statutory or constitutional rights. We conclude that the Privacy Act does not by itself authorize the injunctive relief sought by Doe, and that none of the additional statutory claims asserted by Doe support his claim for relief. However, we conclude that Doe is entitled under the Administrative Procedure Act to a declaration of his right to the partial invalidation of a VA regulation which is squarely contradicted by *Doe II*. Accordingly, in line with the principle that courts should avoid reaching constitutional claims unless necessary to resolution, we withhold judgment on Doe's claims based upon the fourth amendment and the penumbral right to privacy, and vacate the district court's judgments on those issues.

### 1. *Claims for injunctive Relief Based Upon the Privacy Act*

■ The district court concluded that the Privacy Act does not authorize entry of injunctive relief requiring return of the medical records to Doe, exclusion of that information from the grand jury, or a ban on disclosure by the U.S. Attorney and his staff. *See District Court Opinion* at 633–34. We agree. The Act's subsection on civil remedies authorizes entry of injunctive relief in only two specific situations. *See* 5

U.S.C. § 552a(g)(2)(A) (authorizing courts to order agencies to amend an individual's record); 5 U.S.C. § 552a(g)(2)(B) (authorizing entry of reasonable attorney's fees). In so doing, as we have held, the Act precludes other forms of declaratory and injunctive relief, including the orders sought by Doe. *See, e.g., Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1104 (D.C.Cir.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986); *see also id.* (citing cases from other circuits reaching same conclusion).

### 2. *Claims for Injunctive Relief Based Upon Other Statutes*

We next evaluate Doe's claims that he is entitled to equitable relief based upon a number of statutes concerned either with safeguarding individuals' privacy or guaranteeing prosecutorial regularity.

■ Turning first to Doe's contention that the issuance of the grand jury subpoena constituted an abuse of compulsory process, we agree with the district court that this claim affords no basis for relief. *See District Court Opinion* at 630–631. Doe forswears reliance on the common law tort of abuse of process, *see* Brief for Appellant at 22, arguing instead that in light of the protections encoded within the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa *et seq.* (1982), and guidelines promulgated thereunder, *see* 28 C.F.R. §§ 59.1–59.6 (1986), the acquisition of his medical records was "abusive" and unlawful. That statute was passed in response to the Supreme Court's decision in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), holding that the First Amendment did not provide the press with any constitutional protection against police searches. It seeks to regulate searches and seizures of materials possessed by a person with the purpose of disseminating

---

**5.** For the reasons suggested in § II.B, *infra*, we reject Doe's argument that the Justice Department guidelines promulgated under the Privacy Protection Act of 1980 apply to and would have prohibited the issuance of the subpoena in this case.

**6.** With regard to liability under the FTCA, the *Doe II* court stated that it "in no way intimate[d] that there is, indeed, liability under the FTCA." 779 F.2d at 88 n. 26.

them to the public through some form of public communication. *See, e.g.,* 42 U.S.C. § 2000aa(a); *see also* S.Rep. No. 874, 96th Cong., 2d Sess. 4, U.S.Code Cong. & Admin.News 1980, pp. 3950, 3951 (hereinafter "Senate Report").

We find the Act and the regulations thereunder inapposite to Doe's claim, for two reasons. First, as the district court observed, the Act by its own terms restricts only searches and seizures, not subpoenas. In fact, the Act specifically endorses the use of subpoenas as a means of "lessen[ing] greatly" the threat otherwise "pose[d] to the vigorous exercise of First Amendment rights" by searches and seizures. Senate Report at 4–5, U.S.Code Cong. & Admin.News 1980, p. 3951; *see also id.* at 11, U.S. Code Cong. & Admin. News 1980, pp. 3957–58 (stating that only limited exceptions exist to the preference for reliance upon subpoenas over mere search warrants). Second, as is suggested by the fact that the Act was prompted by the first amendment case of *Zurcher, see id.* at 4, U.S.Code Cong. & Admin.News 1980, p. 3950, the Act affords protection only to materials held for the purpose of dissemination to the public, a category into which Doe's medical records do not fall. The Senate Report stated:

> In order to qualify for the statute's protections, the materials must be possessed in connection with a purpose of disseminating some form of public communication. Materials which are prepared or collected for other purposes, are not protected. Thus, business records or reports which are required to be filed with government agencies would not be protected.

*Id.* at 10, U.S. Code Cong. & Admin. News 1980, pp. 3950–3951.[7]

■ Doe's attempt to ground the equitable relief he seeks upon the physician-patient privilege encoded in D.C. Code § 14–307(a) is also misplaced. That provision states:

> In the Federal courts in the District of Columbia and District of Columbia courts a physician or surgeon or mental health professional as defined by the District of Columbia Mental Health Information Act of 1978 (D.C.Code, sec. 6–1611), may not be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the client or from his family or from the person or persons in charge of him.

The district court concluded that § 14–307 is inapplicable to the VA's release to the U.S. Attorney's Office of Doe's medical records, interpreting the provision as creating a mere in-court evidentiary privilege. We agree. Section 14–307(a) is situated in that portion of the D.C. Code setting forth evidentiary rules governing the judicial setting, and specifically within the Code subsection entitled, "Competency of Witnesses." Moreover, by its own terms, the physician-patient provision applies only to disclosures "in the Federal courts." There is no evidence that this provision was intended to create more than an evidentiary rule or to establish a cause of action or a broader right enforceable in out-of-court settings. This finding of a limited privilege applicable only in the judicial context accords with the interpretations of § 14–307 proffered by District of Columbia courts and federal district courts in this circuit. *See, e.g., Logan v. District of Columbia,* 447 F.Supp. 1328, 1335 (D.D.C.1978); *Vassiliades v. Garfinckel's,* 492 A.2d 580, 591 (D.C.App.1985).

■ Nor can we accept Doe's argument that a separate District of Columbia law, the District of Columbia Mental

---

7. Although the Act elsewhere urges the Attorney General to incorporate in his guidelines special concern "for privacy interests in cases in which a search or seizure of such documents would intrude on a confidential relationship such as that between ... doctor and patient," *see* 42 U.S.C. § 2000aa–11(a)(3), this command by its own terms and thus the guidelines promulgated thereunder apply only to searches and seizures, not to the subpoenas which the Act sought to encourage.

Health Information Act, D.C.Code § 6–2001–to–2062, either independently or in conjunction with § 14–307 extends the scope of the physician-patient privilege so as to bar the disclosure occurring in this case. That enactment provides that "no mental health professional, mental health facility, data collector or employeee or agent of a mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer." D.C. Code § 6–2002(a). Despite the seeming facial applicability of this enactment, we agree with the district court that it confers no rights upon Doe. Insofar as the Act purports to regulate the disclosure rules governing information held by the VA, it is squarely preempted by the federal Veterans' Records Statute, an enactment which plainly was designed to occupy the field of rules governing disclosure of veterans' records. On this point, we adopt in its entirety the reasoning of the district court opinion, which stated:

A review of the Veterans' Records Statute reveals that it establishes a comprehensive scheme to regulate the disclosure of veterans' records. As supplemented by the Privacy Act, the Veterans' Records Statute provides carefully crafted rules and procedures regulating disclosure of records, exceptions and limitations, and civil and criminal penalties for specific violations. *See generally* 38 U.S.C. §§ 3301–02; 5 U.S.C. § 552(a). There is no suggestion that Congress intended to permit local or state laws to impose additional requirements and penalties upon the disclosure process. The Court thus concludes that the Veterans' Records Statute, "complete as it is in every detail, was intended to provide the whole and exclusive" law regarding disclosure of VA records.

The Veterans' Records Statute also is part of a field of law in which the federal interest is clearly dominant. Congress'

power to regulate veterans' affairs is directly derived from its share of the federal government's constitutional war powers. Exclusive federal regulation of disclosure of veterans' records thus does not encroach upon an area of "traditional state regulation." Accordingly, the congressional power to regulate disclosure of veterans' records "is of such a nature that the Constitution permits only of one uniform national system."

*District Court Opinion* at 629–30 (citations and footnotes omitted).

Even if the federal enactment did not occupy the regulatory field so as to leave no room for local regulation, the doctrine of federal preemption would still prevent courts from applying the D.C. Mental Health Information Act so as to bar release of federally held records. This is so because imposing such a ban could "substantially impede federal activities or directly place 'a prohibition on the federal government,'" a result forbidden by the Supremacy Clause in the absence of congressional acceptance of the state or local regulation. *See, e.g., Don't Tear It Down, Inc. v. Pennsylvania Avenue Corp.,* 642 F.2d 527, 535 (D.C.Cir.1980) (quoting *Hancock v. Train,* 426 U.S. 167, 180, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976)). Nor is the effect of applying this D.C. enactment to expand Doe's rights vis-a-vis the VA so "incidental or nonburdensome" to escape the ban on uninvited burdens upon federal activities. Violation of the local enactment carries civil and criminal penalties. *See* D.C.Code §§ 6–2061—6–2062. We therefore agree with the district court that Doe cannot premise his request for equitable relief upon this enactment.

3. *Claims Based Upon the Administrative Procedure Act*

■ We turn, finally, to evaluate under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* Doe's claims for equitable relief.[8] Section 10(a) of the APA provides

---

**8.** Strictly speaking, Doe does not premise his claim for equitable relief on the APA. We, however, consider his claim under this enactment because doing so in this case allows us to stop short of resolving Doe's fourth amendment

and right of privacy claims, thereby furthering "an[ ] even more important principle of judicial restraint": the principle of avoiding constitutional questions if at all possible. *See Meredith*

that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ..., is entitled to judicial review thereof." 5 U.S. C. § 702. Section 10(e), in turn, provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Chrysler Corp. v. Brown,* 441 U.S. 281, 317–19, 99 S.Ct. 1705, 1725–27, 60 L.Ed.2d 208 (1979) (holding that grant of injunctive relief to prevent violations of Trade Secrets Act could rest on § 10(a) of the APA even though the underlying enactment gave rise to no private right of action for damages).

This clearly is a case of agency action "not in accordance with law" within the meaning of 5 U.S.C. § 706(2): for the reasons stated in *Doe II* and adopted by the district court, the disclosure of Doe's psychiatric records violated the Veterans' Records Statute, as amended by the Privacy Act. The issue thus becomes whether a injunctive relief is warranted prohibiting the VA from disseminating Doe's clinical psychiatric files.

■ At present, two copies of Doe's medical records exist. The original is kept by the VA; a duplicate is held by the district court under seal, protected from disclosure by the sealed-records provisions of Fed.R.Civ.P. 26(c) and Fed.R.Crim.P. 6(e). The VA, however, has not pledged not to disclose Doe's medical records in the future. Quite the contrary: under a regulation adopted by the VA in 1982 shortly after the initiation of this case, the VA specifically identified the disclosure of information pursuant to grand jury subpoenas as a "routine use" exempted from Privacy Act coverage under that statute's "routine use" exclusion. *See* 5 U.S.C. § 552a(b)(3). Routine Use 23 states:

> Any information in this system may be disclosed to a federal grand jury, a Federal Court or a party in litigation or a Federal Agency or party to an administrative proceeding being conducted by a

Federal Agency, in order for the VA to respond to and comply with the issuance of a federal subpoena.

47 Fed.Reg. 51,841 (1982).

*Doe II* clearly establishes Doe's right not to have the highly personal information and thoughts he has shared with his VA physicians released by the VA in response to a grand jury subpoena. He is clearly entitled to declaratory relief to this effect. For similar reasons, we agree with Doe that Routine Use 23 is invalid to the extent that it authorizes disclosures pursuant to grand jury subpoenas. The Privacy Act defines a "routine use" as "the use of such record for a purpose which is compatible with the purpose for which it is collected." 5 U.S.C. § 552a(a)(7). It is by now well-established that agencies covered by the Privacy Act may not utilize the "routine use" exception to circumvent the mandates of the Privacy Act. *See, e.g., Wisdom v. Department of Housing and Urban Development,* 713 F.2d 422, 424 (8th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1983) ("HUD certainly could not ignore the dictates of the Privacy Act in promulgating regulations"); *Parks v. United States Internal Revenue Service,* 618 F.2d 677, 681 (10th Cir.1980); *see also Andrews v. Veterans' Administration of the United States,* 613 F.Supp. 1404, 1413 (D.Wyo.1985) ("Any regulations enacted under the Privacy Act must be consistent with its purposes, and inconsistent regulations are invalid, and will not justify release of covered information"); *cf. Tijerina v. Walters,* 821 F.2d 789, 795 (D.C.Cir.1987) (construing provisions of Privacy Act allowing agencies to exempt themselves from Act's civil remedies section to extend only so far as they do not "contravene the language of the Act and the purpose behind the general exemptions provision").

In *Doe II,* we held squarely that a grand jury subpoena did not qualify as an "order of the court" so as to come within the exception to the Privacy Act's prohibition upon the disclosure of confidential medical records. Our holding was based in part on

*Corp. v. Federal Communications Commission,*

809 F.2d 863, 872 (D.C.Cir.1987).

the interpretation given similar language in other statutes; we reasoned that "Congress consciously chose to employ the 'order' language" in the Privacy Act rather than the more expensive 'process' language in the Veterans' Records Statute. *See* 779 F.2d at 82–83. But we also relied in *Doe II* on the "purpose and the structure of the [Privacy] Act," finding that "[i]n this case, a fair reading of the statute and its purpose leads to the definite conclusion that Congress did not intend to allow disclosure pursuant to a typical grand jury subpoena." *Id.* at 84. We pointed out that "[t]o read the 'order of the court' language as permitting disclosure pursuant to a subpoena, would create a gaping hole in the overall scheme of the Privacy Act." We stated:

> One of Congress' explicit goals in enacting the Privacy Act was to preclude overzealous investigators from running roughshod over an individual's privacy, and the grand jury subpoena simply does not safeguard against that danger.

*Id.*

Given that our refusal to permit grand jury subpoenas to penetrate the Privacy Act barrier against disclosure of confidential medical records was based on a combination of congressional purpose and the structural integrity of the Privacy Act, it is inconceivable that the agency could circumvent it merely by taking the "routine use" route. The "routine use" contemplated here would simply not be "for a purpose which is compatible with the purpose for which the record was collected" in light of our holding and rationale in *Doe II*. The records can be disclosed only if they come within a legitimate exception to the Privacy Act, e.g., a written request by the head of another agency or an authentic "order of the court." We must therefore conclude that Routine Use 23 is invalid insofar as it would permit routine disclosure pursuant to a grand jury subpoena alone.

 Having concluded that Doe is entitled to declaratory relief against future VA disclosure unauthorized by the Veterans'

Records Statute, and having invalidated the VA's "routine use" regulation insofar as it is inconsistent with the interpretation of that statute offered in *Doe II*, we believe it unnecessary to award Doe additional injunctive relief. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Given that (with the exception of the copy held by the district court) the VA alone possesses Doe's medical records, we also see no need to issue an injunction on his behalf against the U.S. Attorney's office.

### 4. Claims Based Upon the Federal Constitution

We are left then with Doe's requests for equitable relief based upon the fourth amendment and the right to privacy.[9] Having concluded that Doe is entitled to declaratory relief under the APA, however, we find it unnecessary to reach these constitutional grounds. *See Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *see also Doe II*, 779 F.2d at 89 (citing cases counseling abstention from adjudicating constitutional claims if relief has already been granted on statutory grounds). Accordingly, we vacate the district court's judgment on these issues.

### CONCLUSION

For the reasons stated in the foregoing, we affirm the district court's dismissal of Doe's claims based upon the Federal Tort Claims Act and its dismissal of his claims for equitable relief based upon the aforementioned federal and District of Columbia statutes. We, however, find that Doe is entitled to an order declaring that the Veterans' Administration is prohibited from disseminating his medical records in response to grand jury subpoenas. We also instruct the district court to assure that the copy of Doe's medical records presently held under seal is returned to the VA. Finally, we hold Veterans' Administration Routine Use 23 illegal to the extent it is inconsistent with the Privacy Act, as incor-

---

9. Doe's original claims that the disclosure of his records also violated the fifth amendment and the sixth amendment were rejected by the dis-

trict court and not appealed. *See Doe II*, 779 F.2d at 78.

porated into Veterans' Records Statute. The case is remanded to the district court for entry of judgments consistent with the foregoing.

*It is so ordered.*