Edward HAASE, Appellant,

v.

William B. SESSIONS, Director, F.B.I.

No. 88–5303.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1989.
Decided Jan. 16, 1990.

---

David Cole, with whom Michael Ratner and Michael Maggio were on the brief, for appellant.

Edith S. Marshall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees. Michael L. Martinez, Asst. U.S. Atty., also entered an appearance for appellees.

Before: MIKVA, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant, Edward Haase, sought attorney's fees under the Privacy Act of 1974, 5 U.S.C. § 552a, and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The district court concluded that Haase was ineligible for fees under both Acts. We affirm the district court's ruling with respect to Haase's request for fees under the Privacy Act and reverse its ruling and remand the case with respect to Haase's request under EAJA.

## I.

Edward Haase is a freelance journalist. On January 16, 1985, Haase arrived at Miami International Airport from a trip to Nicaragua. Customs Service officers searched Haase's baggage and separated from the rest of his possessions written materials that they considered might be seditious and therefore excludable from entry under 19 U.S.C. § 1305(a) (1982).[1] Among these materials was a list of names and addresses found in the backing of a picture frame, which the officers photocopied. At the officers' request, the FBI dispatched an agent to the airport to question Haase and to examine the contents of his baggage. After the agent and a customs officer photocopied Haase's papers, including Haase's personal address book and a diary containing thoughts recorded during his stay in Nicaragua, they returned the originals and allowed him to pass through customs to

---

1. At the time, 19 U.S.C. § 1305(a) provided, in pertinent part:

    All persons are prohibited from importing into the United States from any foreign country any book, pamphlet, paper, writing, advertisement, circular, print, picture, or drawing containing any matter advocating or urging treason or insurrection against the United States, or forcible resistance to any law of the United States, or containing any threat to take the life of or inflict bodily harm upon any person in the United States.... No such articles shall be admitted to entry....

    19 U.S.C. § 1305(a) (1982) (current version at 19 U.S.C.A. § 1305 (West 1980 & Supp.1989)).

continue his trip. The FBI agent took the photocopies to the FBI Field Office in Miami. In the course of its review of the documents, the FBI created a short memorandum and a page-and-a-half of handwritten notes regarding the incident.

Haase's attorney made two unsuccessful telephone requests, on January 24 and February 8, 1985, for an inventory and return without dissemination of the photocopies made of Haase's materials. On February 19, 1985, Haase brought an action in district court claiming that FBI and Customs Service agents had conducted their investigation of him in violation of the first, fourth, fifth, and ninth amendments, infringed his right to privacy under the Privacy Act and under common law, and acted *ultra vires* the agents' statutory authority. In his complaint, Haase asked for an injunction requiring the government to (1) return or destroy all copies made of his papers; (2) disclose to him all agencies or persons to whom the copies were disseminated; (3) expunge from government files all information gained from his papers; and (4) describe all use the FBI made of the copies. Haase also sought a declaration that the seizure and reproduction of his papers violated his constitutional and statutory rights, that it is unlawful for FBI agents to participate in border searches without probable cause or a warrant, and that 19 U.S.C. § 1305(a) (1982) was unconstitutional.[2]

On the day Haase filed his action, the district court issued a temporary restraining order compelling the government to place all copies of Haase's papers in the custody of FBI Director William Webster in Washington, D.C., forbidding any additional copying of the documents, and requiring the government to disclose the names of all agencies to which the materials had been disseminated. Over the next few months, the government disclosed the

dissemination and use of Haase's documents. And on March 3, 1988, appellees agreed in a stipulation and consent order to return Haase's photocopied documents to him and to destroy all records created in connection with them. On May 14, 1985, the district court granted the government's motion to dismiss Haase's complaint pursuant to FED.R.CIV.P. 12(b). *See Haase v. Webster*, 608 F.Supp. 1227 (D.D.C.1985). The court dismissed as moot Haase's request for injunctive relief on the ground of the government's agreement by that time "in effect ... [to] accede to all the equitable relief [Haase] could conceivably win by way of injunction...." *Id.* at 1231. The court dismissed Haase's request for declaratory relief for want of standing. *Id.* at 1231–34.

On appeal, *Haase v. Webster*, 807 F.2d 208 (D.C.Cir.1986) ("*Haase II*"), we affirmed the district court's dismissal of Haase's request for injunctive relief. We reversed and remanded the district court's dismissal of Haase's request for declaratory relief. On rehearing, *Haase v. Sessions*, 835 F.2d 902 (D.C.Cir.1987) ("*Haase III*"), we vacated that portion of *Haase II* that held that the district court properly treated the government's motion to dismiss, insofar as it related to Haase's request for declaratory relief, as a motion for summary judgment, and we remanded in order to give Haase the opportunity to amend his complaint to plead sufficient facts to warrant standing for declaratory relief. *See* 835 F.2d at 903.

On January 11, 1988, Haase requested that his case be stayed pending resolution of *Heidy v. United States Customs Serv.*, 681 F.Supp. 1445 (C.D.Cal.1988), filed by Haase's counsel on behalf of a nationwide class of persons who had received treatment similar to Haase's on their returns from Nicaragua.[3] The district court denied

---

**2.** On April 18, 1985, Haase filed an amended complaint which alleged for the first time that the January 16 incident was the product of a policy of subjecting travelers returning from Nicaragua to intrusive border searches for intelligence-gathering purposes.

**3.** The court in *Heidy* granted plaintiffs full relief, *see* 681 F.Supp. 1445 (C.D.Cal.1988), and defendants voluntarily withdrew their appeal. While *Heidy* and *Haase* were pending, the Customs Service issued two directives substantially changing its policy and informing its agents for the first time of the constitutional limits on their authority to seize, copy and disseminate

the request, and Haase sought a voluntary dismissal without prejudice. The court dismissed the matter with prejudice. On March 30, 1988, Haase applied for attorney's fees under the Privacy Act, 5 U.S.C. § 552a, and under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[4] The district court denied Haase fees under both Acts. In denying Haase's request under the Privacy Act, the district court stated, "to the extent plaintiff did prevail, he did not do so under the Privacy Act." The district court denied Haase attorney's fees under EAJA on the ground that his request under that Act was time-barred.

## II.

■ Attorney's fees and costs may be awarded against the United States only when, under a particular statute, the government has waived its sovereign immunity. And waivers of sovereign immunity, the Supreme Court has repeatedly reminded us, must be narrowly construed. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (citations omitted). The Privacy Act creates several causes of action for violation of its provisions and further authorizes attorney's fees for plaintiffs who prevail under certain causes of action but not necessarily under others.

The four causes of action are set forth in section 552a(g)(1). The first, (g)(1)(A), authorizes suit when a government agency refuses "to amend an individual's record in accordance with his request"; the second, (g)(1)(B), if an agency refuses improperly to permit an individual access to his records; the third, (g)(1)(C), if an agency fails to

maintain accurate records and an individual is disadvantaged by a government determination based on those records. The fourth, (g)(1)(D), is a catchall provision authorizing suit if an agency fails to comply with any other command of the Act. One of those commands is embodied in section (e)(7) of the Privacy Act, which forbids an agency from maintaining a record "describing how any individual exercises rights guaranteed by the First Amendment unless ... within the scope of an authorized law enforcement activity[.]"

■ The first two causes of action for amendment of records and for access to records incorporate exhaustion requirements. In both cases a plaintiff, according to the statutory language, must initially seek an amendment or access from the agency and even seek review within the agency before coming to court. *See* 5 U.S.C. §§ 552a(g)(1)(A) & (B); 552a(d)(3) & (1). The court is, thereafter, explicitly authorized to provide equitable remedies, amendment in the first case and an injunction prohibiting an agency from improperly withholding records in the second. *See* 5 U.S.C. §§ 552a(g)(2)(A) & (g)(3)(A). In both cases, the statute authorizes attorney's fees to a party who substantially prevails. *See* 5 U.S.C. §§ 552a(g)(2)(B) & (3)(B). Appellant claims that the first of these provisions, (g)(2)(B), which states "[t]hat the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed," authorizes attorney's fees in his case.[5] The

---

travelers' written materials. *See Review, Copying and Seizure of Documents,* Customs Directive No. 3300–04 (June 12, 1986) and *Restrictions on Importation of Seditious Matter,* Customs Directive No. 2210–01 (August 29, 1986).

**4.** Haase sought attorney's fees under both the Privacy Act and EAJA for two reasons. First, EAJA sets a maximum rate of $75.00 per hour for attorney's fees "unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Under the Privacy Act, the court may award "reasonable attorney fees." 5 U.S.C. § 552a(g)(2)(B). Second, EAJA authorizes an award of attorney's fees to a prevailing

party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Privacy Act contains no such limitation. *See* 5 U.S.C. § 552a(g)(2)(B).

**5.** Because identical provisions appear in the statute as 5 U.S.C. § 552a(g)(2)(B) and (g)(3)(B), we understand the "paragraph" referred to in each provision to specify 5 U.S.C. 552a(g)(2) and 552a(g)(3), respectively. *But see Kennedy v. Andrus,* 459 F.Supp. 240, 243 (D.D.C.1978) (reading "this paragraph" to refer to section 552a(g) of the Privacy Act). Any broader construction, for example one interpreting "this paragraph" to

district judge erred, according to appellant, in concluding that appellant, if he prevailed, did not do so under the Privacy Act because appellant in effect brought an action to "amend" his records, and the above-quoted section authorizes attorney's fees in such an action.

The injunction Haase sought, including requiring the government to return or destroy all copies made of his papers and to expunge from its files all information gained from his papers, would seem broader than a mere amendment. It appears to be an action for equitable relief pursuant to the catchall cause of action, (g)(1)(D), based on the government's failure to comply with section (e)(7) by "maintaining records describing how an individual exercises rights guaranteed under the First Amendment." But we have said that the Privacy Act "authorizes entry of injunctive relief in only two *specific* situations." *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C.Cir.1988) (emphasis added). Although *Doe* was not a case in which the plaintiff sought an injunction under section (g)(1)(D) to prevent or remedy activity prohibited by (e)(7), both appellant and the government assume that a section (g)(1)(D) cause of action for a government agency's failure to abide by (e)(7) permits only damages (and only then when the government's actions are intentional or willful).[6]

Instead, appellant claims that the relief he sought and was granted was essentially expungement, which is only a variation of amendment and therefore authorized by section (g)(1)(A) to remedy violations of (e)(7). He relies on *Nagel v. United States Dep't of Health Educ. & Welfare*, 725 F.2d 1438, 1441 (D.C.Cir.1984), in which we stated that an agency's compilation of records in violation of (e)(7) can be remedied through amendment or expungement of the records as well as by damages and that such a suit "does not require any exhaustion of administrative remedies." Our opinion in *Nagel* does not, however, make clear whether we thought the action was brought under (g)(1)(A) or (D) or both. If we were treating it solely as a (g)(1)(A) action, then our elimination of that provision's exhaustion requirement, as well as our view that damages were an available remedy in the case—neither of which is consistent with the plain language of (g)(1)(A)—would have to be ascribed to the importance the court placed on the first amendment rights protected by (e)(7). *Cf. id.* at 1441 ("The mere compilation by the government of records describing the exercise of First Amendment freedoms ... has a chilling effect on such exercise.") And if the *Nagel* court saw the claim as brought under (g)(1)(D)—which does not require exhaustion—the availability of the amendment and expungement remedies might be explained simply as equitable remedies the court believed to be within its power by

refer to 552a(g), would render one of the provisions redundant, and it is a well-settled principle of statutory construction that all words in a statute are to be assigned meaning and not to be construed as duplicative or surplusage. *See United States v. John Peter McGoff*, 831 F.2d 1071, 1083 (D.C.Cir.1987).

**6.** A number of our sister circuits *have* held that injunctive remedies are available only for any agency's wrongful withholding of records under (g)(3)(A) and for an agency's wrongful refusal to amend records under (g)(2)(A), and that the remedy for violations of other provisions of the Privacy Act is limited to damages on a showing that the agency acted intentionally or willfully. *See Clarkson v. Internal Revenue Serv.*, 678 F.2d 1368, 1375–76 & n. 11 (11th Cir.1982); *Parks v. Internal Revenue Serv.*, 618 F.2d 677 (10th Cir. 1980); *Cell Assocs. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1161–62 (9th Cir.1978). But none of these cases dealt squarely with a situation in

which a party charging an (e)(7) violation sought an injunction broader in scope than amendment or expungement to address the offending activity. Indeed, only *Clarkson* dealt with an (e)(7) violation at all. It is not at all clear to us that Congress intended to preclude broad equitable relief (injunctions) to prevent (e)(7) violations such as, for instance, a hypothetical agency's secret compiling of records on Americans' legitimate political activities. And in the absence of such an explicit intention, by creating a general cause of action (under (g)(1)(D)) for violations of the Privacy Act, Congress presumably intended the district court to use its inherent equitable powers—at least to remedy violations of (e)(7). *See Porter v. Warner Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper exercise of that jurisdiction.").

virtue of (g)(1)(D)'s general grant of jurisdiction.[7] Or the proper reading of *Nagel* may be that the (e)(7) claim was brought under both (g)(1)(A) and (g)(1)(D) and therefore that the equitable relief of amendment (and possibly expungement) was available by virtue of (g)(1)(A) while the damages remedy and the absence of the exhaustion requirement were attributable to (g)(1)(D). *Cf. id.* at 1441 ("An individual who states a claim *for damages* under the Act need not exhaust his administrative remedies.") If either the second or the third alternative is the correct reading of *Nagel*, then appellant's reliance on it here is wholly misplaced since his ability to prevail without exhausting his administrative remedies would be based on section (g)(1)(D) of the Act, which does not provide for attorney's fees.

█ In any event, we do not think it necessary to determine whether in a case such as *Nagel* or this one an injunction preventing the maintenance or commanding the expungement of government records of an individual's exercise of first amendment rights in violation of (e)(7) of the Privacy Act is properly brought under (g)(1)(A) (the amendment provision), (g)(1)(D) (the catchall cause of action), or, as the government suggests, under the Constitution, common law, or the APA.[8] Even assuming such an action can rest (in whole or in part) on (g)(1)(A), a plaintiff cannot circumvent the exhaustion requirement and still remain eligible for attorney's fees under (g)(2)(B). That is so because we are obliged to construe waivers of sovereign immunity narrowly. *See Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986).

The amendment cause of action to which Congress attached a specific authorization of attorney's fees on its face requires exhaustion with which the plaintiff did not comply.[9] No matter which theory explains our opinion in *Nagel*, it is not open to us to permit *attorney's fees* to a plaintiff who seeks the amendment remedy without exhaustion.

Appellant argues that Congress could not have intended that attorney's fees be awarded for the less significant cause of action of a simple amendment of a record but not the greater involving protection of constitutional rights. Congress did provide, however, for attorney's fees for actions brought under section (g)(1)(D) to remedy (e)(7) violations—but only where the agency acted in an intentional or willful manner. *See* 5 U.S.C. 552a(g)(4). No attorney's fees (or damages) were authorized for an action under (g)(1)(D) if no intentional conduct was shown. Congress provides for attorney's fees, moreover, in situations where it wishes to encourage lawsuits that might not otherwise be brought. It is perfectly plausible to assume that since Congress, in non-damage actions, explicitly provided for an individual to seek relief from an agency before bringing suit, it did not wish to encourage such suits without giving the agency an opportunity to correct the records and to avoid the need for suit. Thus, even if *Nagel* is properly interpreted not to require exhaustion *under (g)(1)(A) (for amendment)* where an (e)(7) violation is alleged, it does not follow that Congress would necessarily have thought attorney's fees were desirable to encourage such a suit.

---

7. The *Nagel* opinion does, however, cite *Clarkson's* proposition that equitable remedies are available only under (g)(2)(A) and (g)(3)(A). *See Nagel*, 725 F.2d at 1441.

8. Haase points out that where resolution of a non-fee claim makes consideration of a fee claim unnecessary, the plaintiff is entitled to a determination on the other claim for purposes of awarding fees. *See Maher v. Gagne*, 448 U.S. 122, 132 n. 11, 100 S.Ct. 2570, 2574 n. 11, 65 L.Ed.2d 653 (1980). Here, however, fees are unavailable under the Privacy Act not because the court has failed to reach a claim under the

Act for which fees are authorized but because section (g)(2)(B) of the Privacy Act does not make fees available to a litigant who has failed to exhaust the remedy provisions set forth in section (d)(3) of the Act.

9. Appellant points out that his attorney made two telephone requests to the FBI for an inventory, the return of his documents, and the prevention of their dissemination. These requests do not, and appellant does not argue that they do, satisfy the exhaustion requirement set forth in section (d)(3) of the Privacy Act.

## III.

Appellant also sought fees under the Equal Access to Justice Act ("EAJA"). Under EAJA, a party prevailing against the government may recover attorney's fees unless the government's position is substantially justified or special circumstances make the award unjust. 28 U.S.C. § 2412(d)(1)(A). Section 2412(d)(1)(B) of EAJA requires that a party seeking attorney's fees apply for them within thirty days of final judgment in the action in which that party prevails. Under section 2412(d)(2)(G) of the Act, a final judgment is "a judgment that is final and not appealable, and includes an order of settlement." Thus, EAJA allows for the filing for fees within thirty days after the expiration of the time for appeal. *See Massachusetts Union v. Pierce,* 755 F.2d 177, 180 (D.C. Cir.1985).

Haase moved for dismissal without prejudice on January 11, 1988. The following colloquy between the court and counsel ensued:

THE COURT: All right. You are moving voluntarily to dismiss [civil action no.] 85–587.

MR. COLE: Dismiss without prejudice.

THE COURT: Any opposition, Mr. Martinez?

MR. MARTINEZ: I don't oppose it, your honor, although the question of without prejudice I think raises an issue. I suppose Mr. Cole could come back here next year and file the same case if he doesn't get the relief he seeks.

MR. COLE: I think that is very unlikely.

THE COURT: I am going to dismiss it with prejudice. The motion is granted.

The government argues that the district court's dismissal with prejudice was by agreement of both parties and therefore represented a "final judgment" from which appellant's thirty-day time period for filing an EAJA petition for fees began to run. The record plainly reflects, however, that the district court dismissed the case with prejudice over appellant's express request that he not do so. Haase was therefore entitled to appeal the dismissal. *See LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601,

603 (5th Cir.1976). Since the thirty-day EAJA time period did not begin to run until Haase's sixty-day appeal period expired on March 11, 1988, *see* FED.R.APP.P. 4(a), appellant's application for fees on March 30, 1988 was within EAJA's thirty-day filing period.

\* \* \* \* \* \*

For the reasons stated above, we affirm the district court's denial of Haase's application for fees under the Privacy Act and reverse its decision that Haase was time-barred from applying for fees under EAJA. Haase's EAJA request is therefore remanded for determination of whether Haase is entitled to fees under that Act's provisions.

*It is so ordered.*