Michael MANDEL, Plaintiff,

v.

UNITED STATES OFFICE OF PER-
SONNEL MANAGEMENT, Joseph
(Jay) McCann, and John H. Crandell,
Defendants.

No. CV 99–7311(ADS)(WDW).

United States District Court,
E.D. New York.

Feb. 15, 2003.

Wolin & Wolin, Jericho, NY (Alan E.
Wolin, of Counsel), for plaintiff.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by Vincent Lipari, Assistant United States Attorney, Central Islip, NY, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action was commenced by Michael Mandel ("Mandel" or the "plaintiff") against the United States Office of Personnel Management ("OPM"), Joseph Jay McCann ("McCann"), and John H. Crandell ("Crandell") (collectively, the "defendants") for violations of the Privacy Act, 5 U.S.C. § 552 ("Privacy Act"). Presently before the Court are two motions: (1) the plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and (2) the defendants' cross-motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated. On March 16, 1997, the Immigration Naturalization Service ("INS") appointed the plaintiff as a Detention Enforcement Officer. By a letter dated May 1, 1997, OPM advised Mandel that the results of a standard background investigation "raised a serious question as to [his] current suitability for competitive Federal employment." Attached to the letter was a summary of charges and supporting information, which claimed that when he applied for his position as Detention Enforcement Officer, he failed to disclose his resignations, after notification of termination, from his employment as a corrections officer for the Nassau County Department of Corrections ("NCDC") and as a police officer for the Westchester County Department of Public Safety ("WCDPC").

The summary revealed that the plaintiff received unsatisfactory performance ratings during his employment with NCDC, which resulted in his resignation. The summary stated that he was involved in several incidents at NCDC indicating misconduct or negligence. Such incidents included, among others, (1) publicly unloading his firearm in violation of firearms policy; and (2) losing a spray container of mace at NCDC's gymnasium. The summary noted that the plaintiff's supervisors at NCDC, Dorothy Garage ("Garage") and Sergeant Richard Beh ("Sergeant Beh") reported that they considered Mandel a danger to himself and to other officers.

In an undated document, the plaintiff submitted a detailed response to OPM's summary, which contained several exhibits, and stated:

> Several of the misrepresentations were intentional in the sense that there were several incidents in my work history that "on paper," without explanation, reflected poorly on my character. Unfortunately, I had to make an instant decision whether to disclose what I knew in my heart to be false, misleading and ultimately fatal to my job prospects with the INS.
>
> I also knew that given the opportunity to explain the story behind the work history, I would be able to put my best foot forward and do an honest and good job for INS. For better or for worse I came to the conclusion that if I made the disclosures, that I would not be given the opportunity to explain my prior work history (especially with the Nassau County Correction Department). Consequently, I decided not to disclose this history.

Throughout the document, the plaintiff denied and contested all of OPM's charges. Mandel also stated that he did not believe

that his experience with the WCDPC was a work experience, because he was in a training class for approximately two months; did not graduate from the Police Academy; and was never certified as a Police Officer. In his response, the plaintiff repeatedly asserted that his supervisors at NCDC, Sergeant Beh and Garage, fabricated the incidents alleged in OPM's summary of charges and that they orchestrated a plan to destroy his credibility.

In a letter dated October 8, 1997, OPM issued a negative suitability determination and directed the INS to remove the plaintiff from the position of Detention Enforcement Officer for (1) misconduct and/or negligence in prior employment; and (2) falsifying federal documents. Mandel appealed OPM's unsuitability finding to the Merit Systems Protection Board ("MSPB"). At the plaintiff's request, a hearing was held on March 19, 1998 and April 3, 1998, before an administrative law judge ("ALJ"), in which McCann represented OPM as its attorney.

Prior to the hearing, Crandell, who is OPM's chief of oversight and technical support division, which provides paralegal support to OPM for administrative hearings, faxed to Garage three subpoenas issued by the MSPB administrative judge for NCDC employees Garage, Sergeant Beh, and Lieutenant Philip Carucci, to obtain their testimony at the hearing.

To prepare Garage and Sergeant Beh to testify at the hearing with regard to the plaintiff's employment with NCDC and to rebut the plaintiff's anticipated testimony, McCann transmitted to them three facsimiles. The facsimiles contained (1) the summary of charges and supporting information and Mandel's response; (2) a copy of OPM's report of investigation, together with Mandel's response to the incidents raised during the investigation, and personnel documents relating to his prior employment with NCDC and WCDPS; and (3) Mandel's undated response to the charges. The defendants did not seek the plaintiff's permission prior to releasing the records in question.

On March 19, 1998 and April 3, 1998, Sergeant Beh and Garage testified before the ALJ on behalf of OPM and were cross-examined by the plaintiff's counsel. In a decision dated June 15, 1999, the ALJ sustained OPM's unsuitability findings on the grounds that, (1) Mandel's unsatisfactory performance ratings at NCDC constituted negligence in prior employment; (2) Mandel engaged in misconduct when he lost a can of mace at the NCDC's gymnasium; and (3) Mandel falsified federal documents by not disclosing his employment with, and resignation in lieu of termination from, WCDPS and NCDC.

Furthermore, the ALJ determined that the plaintiff's falsification of federal documents was sufficient to show unsuitability:

**[Mandel] obtained federal employment twice without disclosing his complete employment history. The information [he] failed to disclose went to the heart of his suitability for federal employment since both matters he failed to disclose involved his conduct and performance in a law enforcement position. . . .**

**[T]he [MSPB] Board has reaffirmed its view that falsification of employment documents is a serious offense that warrants removal and debarment in most cases. . . .**

**I find that Mandel committed deliberate acts of omission that materially undermines his credibility and evidences his unsuitability for the federal position sought. [His] acts of omission were deliberate and calculated, and show a reckless disregard for the truth.**

At the hearing, [Mandel] showed no remorse for his actions, choosing instead to blame others for putting him in the position of having to obfuscate the truth to achieve his ends. Regardless of his subjective perceptions, the [plaintiff's] conduct exhibits a pattern of deception that is inconsistent with the qualities needed to be an effective law enforcement officer. While I recognized the zeal with which the [plaintiff] performed his duties, and his passion for law enforcement, it is clear from this record that the [plaintiff's] Machiavellian approach to truth has colored his judgment, thus making him unsuitable for federal employment at this time.

Upon Mandel's appeal, the United States Court of Appeals for the Federal Circuit affirmed the MSPB's decision and held, "we discern no basis for overturning the finding that Mr. Mandel's failure to report his employment with both the Nassau County Department of Corrections and Westchester County Department of Safety, on several employment forms and during his personal interviews, was grounds for dismissal." *Mandel v. OPM,* 20 Fed. Appx. 901, 901, 2001 U.S.App. LEXIS 23549, at *1 (Fed.Cir. Oct. 17, 2001).

On November 11, 1999, Mandel commenced this action against the defendants, alleging that they violated the Privacy Act by disclosing confidential documents to his former supervisors, Garage and Sergeant Beh. On April 12, 2002, the plaintiff filed a motion for summary judgment seeking judgment in his favor. Mandel argues that, (1) OPM disclosed certain information in violation of the Privacy Act; (2) such information was contained within a system of records; (3) the disclosure had an adverse effect on the plaintiff resulting in emotional distress and pecuniary loss; and (4) OPM's disclosure was willful or intentional.

On April 29, 2002, the defendants filed a cross-motion for summary judgment seeking to dismiss the complaint. The defendants argue that, (1) Mandel waived any Privacy Act protection by initiating the MSPB Proceeding, or, even if no waiver is established, the plaintiff's rights under the Privacy Act were not violated because the disclosure of the records fall within the "routine use" exception; (2) no causal connection exists between the disclosure of the documents and Mandel's emotional distress and pecuniary loss; and (3) no individual liability exists under the Privacy Act.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment under Fed.R.Civ.P. 56 should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (in-

ternal quotations and citations omitted); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there is are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. Privacy Act

The Privacy Act provides, in part, that "no agency shall disclose any record which is contained in a system of records ... to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains...." The term "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

■ Under the Privacy Act, a plaintiff may recover monetary damages if the government has disclosed information regarding the individual. To prevail, the plaintiff must prove: "(1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclosed the information'; (3) the disclosure had an 'adverse effect' on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was willful or intentional." *Germosen v. Cox,* No. 98 CV 1294, 1999 WL 1021559, *18, 1999 U.S. Dist. LEXIS 17400, at *55 (S.D.N.Y.Oct.29, 1999) (quoting *Quinn v. Stone,* 978 F.2d 126, 131 (3rd Cir.1992)).

### 1. Routine Use Exception

The defendants argue that Mandel waived any Privacy Act protection by initiating the MSPB Proceeding, or, even if no waiver is established, the plaintiff's rights under the Privacy Act were not violated because of the "routine use" exception. The Privacy Act permits disclosure of an

otherwise protected record without consent whenever such disclosure is "for a routine use." 5 U.S.C. § 552a(b)(3). "Routine use" is defined as "the use of such records for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The Privacy Act requires the agency to enter the list of its "systems of records" in the Federal Register and include therein "each routine use of the records contained in the system, including the categories of users and purpose of such use." 5 U.S.C. § 552a(e)(4)(D). Thus, to fall within the routine use exception: (1) notice of the routine use must be published in the Federal Register pursuant to 5 U.S.C. § 552a(e)(4); and (2) the use must be compatible with the purpose for which the information was collected. *Shannon v. General Elec. Co.*, 812 F.Supp. 308, 316 (N.D.N.Y.1993) (citing *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 547 (3d Cir.1989)).

The defendants claim that the disclosure of the information pertaining to the plaintiff was authorized as a "routine use." In particular, the defendants argue that the records disclosed to Sergeant Beh and Garage related to the plaintiff's appeal to the MSPB of OPM's negative suitability determination and the records therefore fall within OPM/CENTRAL–7. The "system of records" under OPM/CENTRAL–7 contains, among other things, "administrative appeals; investigative reports; retirement records; official personnel records; documentation of litigation including complaints, answers, motions, briefs, orders, and decisions. . . ." 60 Fed.Reg. 63075–63084 (1995). The stated purpose of maintaining these records is "to defend OPM against lawsuits and to settle administrative claims brought against OPM or OPM employees." 60 Fed.Reg. 63084. Furthermore, the Federal Register provides

that OPM/CENTRAL–7 records are subject to the following routine uses:

**Routine uses 1 through 10 of the Prefatory Statement at the beginning of OPM's system notices apply to the records maintained within this system. The routine uses listed below are specific to this system of records only:**

**a. To any source where necessary to obtain information relevant to an OPM decision or action involved in one of the purposes for maintenance of the system.**

60 Fed.Reg. 63084.

■ Mandel contends that the purpose for which the records were collected was to determine his suitability for federal employment. As such, Mandel asserts that the records in question did not fall within OPM/CENTRAL–7, but within OPM/CENTRAL 9. He argues that the defendants' use of the records did not constitute a "routine use" under OPM/CENTRAL 9. The defendants respond by arguing that regardless of whether the records fall within either OPM/CENTRAL–7 or OPM/CENTRAL–9, the release was compatible with, and the routine use was applicable to, both OPM/CENTRAL–7 records and OPM/CENTRAL–9 records. The Court agrees.

In OPM/CENTRAL–9, the "system of records" contains, among other things:

**investigative information regarding an individual's character, conduct, and behavior in the community where he or she lives or lived . . . . reports of interviews with the subject of the investigation and with the present and former supervisors, co-workers, associates, educators, etc.; reports about the qualifications of an individual for a specific position and correspondence relating to the adjudication matters; reports of inquiries with law enforce-**

ment agencies, employers, educational institutions attended.

58 Fed.Reg. 19184 (1993).

The purpose of maintaining OPM/CENTRAL–9 include:

a. **To provide investigatory information for determination concerning compliance with Federal personnel regulations and for individual personnel determinations including suitability and fitness for Federal employment....**

b. **To document such determinations[.]**

58 Fed.Reg. 49573–49573. OPM/CENTRAL–9 records are subject to routine uses 4 through 10 of the Prefatory Statement at the beginning of OPM's system of notices. 60 Fed.Reg. 63084.

Routine use 7 of the Prefatory Statement at the beginning of OPM's system notices applies to both OPM/CENTRAL–7 and OPM/CENTRAL–9 records. 60 Fed. Reg. 63084. It provides:

7. **For Litigation—To disclose information .... in a proceeding before a court, adjudicative body, or other administrative body before which OPM is authorized to appear, when:**

1. **OPM, or any component thereof;**

   is a party to litigation or has an interest in such litigation, and the use of such records by ... OPM is deemed by OPM to be relevant and necessary to the litigation provided, however, that the disclosure is compatible with the purpose for which records were collected.

60 Fed.Reg. 63077.

The Court finds that both these exceptions cover the situation in this case. The records were disclosed to Sergeant Beh and Garage only after the plaintiff filed an appeal with the MSPB. Crandell, the chief of the division, which provides paralegal support to OPM, faxed subpoenas to Sergeant Beh and Garage, Mandel's former supervisors at NCDC. McCann, OPM's attorney, provided Sergeant Beh and Garage with three documents which contained (1) the summary of charges and supporting information and Mandel's response; (2) a copy of OPM's report of investigation, in addition to Mandel's responses to incidents raised during the investigation, and personnel documents relating to his prior employment with NCDC and WCDPS; and (3) the plaintiff's response to the charges.

The disclosure was made for the limited purpose of helping prepare Sergeant Beh and Garage to testify at the MSPB hearing with regard to the circumstances surrounding the plaintiff's employment with NCDC. In addition, the records were revealed in anticipation of Mandel's testimony that Sergeant Beh and Garage had falsely accused him of misconduct and unfairly forced him to resign. The Court finds that the disclosure was compatible with the purposes of maintaining both OPM/CENTRAL–7 records (*i.e.*, "defend OPM against lawsuits and to settle administrative claims brought against OPM"), *see* 60 Fed.Reg. 63084, and OPM/CENTRAL–9 records (*i.e.*, "To provide investigatory information for determination concerning compliance with Federal personnel regulations and for individual personnel determinations including suitability and fitness for Federal employment"), *see* 58 Fed.Reg. 19154.

The language under both exceptions explicitly authorized the disclosure of the plaintiff's records to Sergeant Beh and Garage in conjunction with the MSPB hearing. In addition, the plaintiff does not contend that his records were disclosed for any other purpose. Accordingly, the Court finds that the disclosure of the records in question fall within the "routine use" exception under the Privacy Act. Be-

cause the Court finds that Mandel's rights were not violated under the Privacy Act, the Court need not address whether the plaintiff waived any Privacy Act protection in the documents.

## 2. Adverse Effect

■ Even if the disclosure did not fall within the routine use exception, the defendants correctly assert that the disclosure had no adverse effect on the plaintiff. Mandel's assertion that he suffered emotional distress and pecuniary loss, standing alone, cannot sustain an award of damages. As discussed above, in order to recover monetary damages under the Privacy Act, Mandel has the burden of establishing a causal connection between the agency violation and the alleged adverse effect. *Germosen v. Cox*, No. 98 CV 1294, 1999 WL 1021559, *18, 1999 U.S. Dist. LEXIS 17400, at *55 (S.D.N.Y. Oct. 29, 1999).

The MSPB and the United States Court of Appeals for the Federal Circuit in *Mandel v. OPM*, 20 Fed. Appx. 901, 2001 WL 1246615 (Fed.Cir. Oct.17, 2001), found that Mandel falsified federal employment records by not disclosing that he had resigned in lieu of terminations from WCDPS and NCDC. In particular, the ALJ asserted, "I find that [Mandel] committed deliberate acts of omission that materially undermines his credibility and evidences his unsuitability for the federal position sought. [His] acts of omission were deliberate and calculated, and show reckless disregard for the truth." Thus, the ALJ determined that the plaintiff's falsification, in and of itself, was sufficient to support OPM's unsuitability determination. As such, the Court finds that Mandel's acts of omissions and falsifications caused him to suffer emotional distress and pecuniary loss, not the disclosure. Accordingly, the Court finds that the plaintiff has failed to establish the causal connection between the disclosures made and the adverse effect.

## 3. Individual Liability

■ The Court notes that the plaintiff fails to state a cognizable claim for individual liability against McCann and Crandell. It is well-established that under the Privacy Act, a plaintiff may file a suit against an agency, and not an individual. *See* 5 U.S.C. § 552a(g). Courts have held that individual officers are not proper parties to a Privacy Act action. *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir.2000); *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1216 (5th Cir.1989); *Brown–Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983). Thus, "because Congress has created no cause of action against individual government officials for violating the Privacy Act, these defendants are exposed to no liability for which they might assert an immunity defense." *Connelly*, 876 F.2d at 1216 (citing *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir.1988)). Accordingly, the claims against McCann and Crandell must be dismissed.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the plaintiff's motion for summary judgment is **DENIED;** and it is further

**ORDERED,** that the defendants' cross-motion for summary judgment is **GRANTED** and the plaintiff's complaint is dismissed in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**